UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01155 JVS (AJWx) | Date | January 7, 2016 |
| Title | Consumer Financial Protection Bureau v. Stephen Lyster Siringoringo, et al. | | |

| | |
|---|---|
| Present: The Honorable | James V. Selna |

| | |
|---|---|
| Karla J. Tunis | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not present | Not Present |

**Proceedings:** (IN CHAMBERS) **Order Granting Plaintiff's Application for Default Judgment**

Plaintiff Consumer Financial Protection Bureau ("Bureau") applies for entry of default judgment against Defendants Clausen & Cobb Management Company, Inc., a corporation ("CCMC"), and Joshua Cobb, an individual ("Cobb," collectively "Defendants"[1]). (Docket ("Dkt.") No. 68.) The Bureau seeks a permanent injunction, a finding that the Defendants violated the Mortgage Assistance Relief Services Rule, 12 C.F.R. Part 1015 (2011) ("Regulation O"), a finding that the Defendants violated the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5531, 5536 ("CFPA"), and a judgment ordering Defendants to pay a civil money penalty of $12,000,000.00. (Id.) The Bureau also filed a supplemental brief in response to a request of this Court. (Dkt. Nos. 82-84.)

As set forth below, the Court grants the application for default judgment.

I. Background

The background is based on the complaint. On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages. See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."

[1] As there are other defendants in this case that are not the subject of this application for default judgment, the term Defendants is used in this Order to refer only to Cobb and CCMC except where otherwise noted.

Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992).

The Bureau alleges Defendants violated the Consumer Financial Protection Act of 2010 (CFPA) and the Mortgage Assistance Relief Services Rule (Regulation O) by Defendants' marketing and sale of purported loan-modification services. Specifically, the Bureau alleges that the Defendants' requests for advance fees violated Regulation O, 12 C.F.R. § 1015.5(a); Defendants' misrepresentations violated Regulation O, 12 C.F.R. § 1015.5(b)(1),(2),(8); Defendants' failure to make disclosures violated Regulation O, 12 C.F.R. § 1015.4(a)(1),(2); and Defendants' deceptive acts and practices violated the CFPA, 12 U.S.C. §§ 5531, 5536. (Compl. ¶¶ 34-43, Dkt. 1.)

The Bureau alleges that thousands of financially distressed consumers paid thousands of dollars in advanced fees for loan-modification services, but received few (if any) promised services or relief. (Id. ¶¶ 12, 16.) Defendants marketed these purported loan-modification services through television, radio, direct mail, and internet advertisements. (Id. ¶ 14.) These ads falsely suggested that consumers would receive the services of an attorney, Stephen Lyster Siringoringo ("Siringoringo"). (Id.) CCMC employees would meet with these consumers, mislead the consumers into believing they were eligible for loan modifications, and falsely tell consumers Siringoringo would directly negotiate with the consumers' lenders or servicers. (Id. ¶ 15.)

Defendants would charge consumers a fee between $1,995 and $3,500 for preparation of a loan-modification application and Defendants charged a monthly fee of $495 for purported continued processing, communication, and negotiation with the lender or servicer. (Id. ¶ 17.) Consumers paid these fees before a written agreement was reached with the consumers' lenders or servicers. (Id.) In many instances, Defendants would not answer or return consumers' telephone calls and emails after the consumers paid the advance fees. (Id. ¶ 18.) In many instances, consumers received no representation by an attorney. (Id. ¶ 19.)

Defendants never filed an answer in this case. The Clerk entered defaults against Cobb and CCMC on January 21, 2015. (Dkt. No. 28.) Defendants filed two motions on February 2, 2015 to "quash service"[2] and set aside the entry of default. (Dkt. Nos. 33,

[2] As described in the Court's March 2, 2015 Order, the motion to quash service was not proper because default had already been entered against Defendants. (Order 2 n. 2, Dkt. No. 37.)

34.) Cobb and CCMC's motions to set aside the defaults were denied by the Court on March 2, 2015. (Dkt. No. 37.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 55(b)(2), a "party may apply to the court for a default judgment." Granting an application for default judgment pursuant to Rule 55(b)(2) is within the discretion of the Court. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The Court will consider the following factors: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel, 782 F.2d at 1471-72. Local Rule 55-1 requires an application for default judgment to be accompanied by a declaration including the following information: "(a) when and against what party the default was entered; (b) the identification of the pleading to which default was entered; (c) whether the defaulting party is an infant or incompetent person . . .; (d) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) that notice has been served on the defaulting party, if required by F. R. Civ. P. 55(b)(2)."

On an application for a default judgment, the factual allegations in the complaint are taken as true, with the exception of those regarding damages. See Pope v. United States, 323 U.S. 1, 12 (1944); Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. Discussion

The Bureau seeks judgment on Defendants liability for violations of Regulation O and the CFPA.

### A. Application of Default Judgment Standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01155 JVS (AJWx) | Date | January 7, 2016 |
| Title | Consumer Financial Protection Bureau v. Stephen Lyster Siringoringo, et al. | | |

The Court begins by noting that the Bureau has established the required elements for the entry of default judgment under Local Rule 55-1. The Bureau has set forth that the Clerk entered default against Cobb and CCMC on January 21, 2015 and the default is based on Defendants' failure to answer the complaint. Factors (c) and (d) of Local Rule 55-1 do not apply to this case. The Bureau has set forth that notice of this motion has been served on Defendants under Federal Rule of Civil Procedure 5(b)(2)(C). (Peltz Decl. Supp. Appl. Default J. ("Peltz Decl.") ¶ 8, Dkt. No. 74.)

Further, the Eitel factors favor default judgment. The first factor favors default judgment. The Bureau has expended effort and incurred costs and spent a great amount of time prosecuting this action. Moreover, under the CFPA, victims of the Defendants' violation of federal consumer financial laws may be compensated for the harm caused by Defendants when the Bureau collects a civil monetary penalty. 12 U.S.C. § 5497(d).

The second and third factors also favor default judgment. As discussed below, the factual allegations contained in the complaint, now taken as true, establish that Defendants violated Regulation O and the CFPA. Declarations submitted in support of the proposed civil monetary penalty, discussed below, provide further support for the merits of the Bureau's claims.

The fourth factor, the sum of money at stake, is significant: $12,000,000. Nevertheless, as described below, the uncontroverted evidence suggests that the sum of money Defendants are potentially liable to pay in a civil penalty could have been assessed at a much higher amount. Consequently, this factor slightly favors default judgment.

The fifth factor addresses the possibility of dispute concerning material facts. Only one other defendant in this action, Siringoringo, has answered the complaint. (Dkt. No. 61.) Siringoringo's answer, relying on general denials, does little to suggest that there will be a dispute of material fact in this case. Additionally, the Bureau has filed a motion for partial summary judgment as to Siringoringo's own violation of Regulation O. (Dkt Nos. 64–67.) The Court has granted that motion. (Dkt. No. 80.) One other defendant, Alfred Clausen, has yet to be served, but according to the San Bernardino County District Attorney's Office, Alfred Clausen has left the country and there is a warrant out for his arrest. (Peltz Decl. Supp. Ex Parte Appl. Set Aside Defaults ¶ 10, Dkt No. 39-1.) Consequently, the Court concludes that even if there is a theoretical possibility of a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01155 JVS (AJWx) | Date | January 7, 2016 |
| Title | Consumer Financial Protection Bureau v. Stephen Lyster Siringoringo, et al. | | |

dispute concerning material facts, that possibility is remote and this factor still favors default judgment.

The sixth factor concerns the possibility that the default was due to excusable neglect. However, the Court has already found that the Defendants' failure to answer was intentional and constituted culpable conduct. (Order 5, Dkt. 37.) Consequently, this factor favors default judgment.

The final factor never favors default judgment. However, ultimately a balancing of the Eitel factors strongly favors default judgment in this case.

B. Regulation O

For purposes of Regulation O, a mortgage assistance relief service provider "means any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" but does not mean "the dwelling loan holder, or any agent or contractor of such individual or entity" or "the servicer of a dwelling loan, or any agent or contractor of such individual or entity." 12 C.F.R. § 1015.2.

The Court concludes Defendants are mortgage assistance relief service providers because Defendant offered to provide mortgage relief services. Cobb actively managed the operation and CCMC personnel were directed to specifically offer purported mortgage relief services. (Compl. ¶¶ 11, 13, 15.)

*Advanced Fees*

Under Regulation O, a mortgage assistance relief service provider may not "request or receive payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's dwelling loan holder or servicer incorporating the offer of mortgage assistance relief the provider obtained from the consumer's dwelling loan holder or servicer." 12 C.F.R. § 1015.5.

The Court concludes Defendants violated Regulation O because Defendants unlawfully charged advance fees. As described above, Defendants charged both initial fees and monthly fees prior to obtaining an executed written agreement between the consumer and the consumer's dwelling loan holder or servicer. (Compl. ¶ 17.)

*Misrepresentations*

Under Regulation O, a mortgage assistance relief service provider may not misrepresent "any material aspect of any mortgage assistance relief service" including "(1) [t]he likelihood of negotiating, obtaining, or arranging any represented service or result . . . (2) [t]he amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result" or "(8) [t]hat the consumer will receive legal representation." 12 CFR § 1015.3(b).

The Court concludes Defendants violated Regulation O because Defendants misleadingly suggested that they enjoyed high rates of success in obtaining loan modification, misled consumers into believing they would obtain a modification within 45 days and they misled consumers into believing they would receive the services of an attorney. (Compl. ¶¶ 14-15.) In numerous instances, consumers received no representation by an attorney and in numerous instances consumers never received loan modifications, let alone within 45 days. (Id. ¶¶ 18-20.)

*Required Disclosures*

Under Regulation O, a mortgage assistance relief service provider must disclose in every commercial communication that they are not associated with the government and that their service is not approved by the government or the consumer's lender. 12 CFR §§ 1015.4(a)(1) & (b)(2). A mortgage assistance relief service provider must also disclose in consumer-specific commercial communications that the consumer may stop doing business with the provider and that if they stop doing business or reject an offer of mortgage assistance the consumer does not need to pay the mortgage assistance relief service provider. 12 CFR §§ 1015.4(b)(1), 1015.5(b).

The Court concludes Defendants violated Regulation O because Defendants never disclosed that they were not associated with the government and that their services were not approved by the government or the consumer's lender. (Compl. ¶ 17.) Defendants also violated Regulation O because Defendants never disclosed that consumers could cease doing business with Defendants without paying for Defendants' services. (Id.)

C. CFPA

Under the CFPA, a "covered person" is defined as "any person that engages in offering or providing a consumer financial product or service." 12 U.S.C. § 5481(6). A "consumer financial product or service" includes "providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure." 12 U.S.C. §§ 5481(5); 5481(15)(viii).

For reasons expressed above, the Defendants are both covered persons for purposes of the CFPA because they offered services to assist consumers with debt management or settlement and modifying the terms of any extension of credit.

The CFPA prohibits covered persons from engaging in "any unfair, deceptive, or abusive act or practice." 15 U.S.C. § 5536.[3] Courts have determined that the standard for a CFPA deception claim is the same as the standard under section 5(a) of the Federal Trade Commission Act. Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C., _ F. Supp. 3d. _, 14-cv-2211, 2015 WL 4282252, at *20 (N.D. Ga. July 4, 2015). See also Consumer Fin. Prot. Bureau v. ITT Educ. Servs., Inc., _ F. Supp. 3d _, 14-cv-292, 2015 WL 1013508, at *17-20 (S.D. Ind. Mar. 6, 2015), appeal docketed, No. 15-1761 (7th Cir. Apr. 8, 2015) (CFPA's prohibition on "unfair" or "abusive" practices is not unconstitutionally vague because longstanding interpretations of the Federal Trade Commission Act should inform interpretation of the CFPA).

Under interpretation of section 5(a) of the Federal Trade Commission Act, the agency, in order to prove a deceptive act or practice, must show (1) a representation, omission or practice that, (2) was likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice was material. FTC v. Stefanchik, 559 F.3d 924, 928 (9th Cir. 2009) (quoting FTC v. Gill, 265 F.3d 944, 950 (9th Cir. 2000)). The agency is not required to show that all consumers were deceived; rather, the agency must show that marketing material included "misrepresentations in a manner likely to mislead reasonable consumers." Stefanchik, 559 F.3d at 929, n. 12 ("The existence of some satisfied customers does not constitute a defense under the FTCA.").

Here, Defendants heavily marketed to financially distressed consumers loan-

[3] The CFPA also permits the Bureau to commence a civil action such as this one to prevent a covered person from committing or engaging in an unfair, deceptive, or abusive act or practice under federal law. 12 U.S.C. §§ 5531(a); 5564.

modification services that violated federal law. (Compl. ¶¶ 12, 14.) The representations made in person and in advertisements that an attorney would represent the consumer, when no attorney actually represented the consumer, constitutes a material misrepresentation. The Court concludes that this form of misleading marketing, made without required disclosures, constitutes an unfair, deceptive, or abusive act or practice under the CFPA because whether an attorney would represent a consumer would materially inform a consumer's decision to engage the services of the person offering loan modification services. See also 12 CFR § 1015.3(b)(8).

Defendants also represented to consumers, in person, that they would obtain a loan modification within 45 days, when no loan modification necessarily materialized within that time period. (Compl. ¶¶ 15, 18.) The Court concludes that such a representation, without appropriate disclosures, would also constitute an unfair, deceptive, or abusive act or practice under the CFPA because a representation that loan modifications were available within 45 days, regardless of the circumstances of their particular case, could deceive reasonable consumers and would materially inform the consumer's decision to engage the service of the person offering the loan modification services. See also 12 CFR § 1015.3(b)(2).

D. Proposed Relief

1. Permanent Injunction

The Bureau seeks a permanent injunction against Defendants. Federal law provides that the Bureau may commence a civil action, such as this one, to "seek all appropriate legal and equitable relief including a permanent injunction . . . as permitted by law." 12 U.S.C. § 5564(a).

The Court's authority to grant such permanent injunction is governed by 12 U.S.C. § 5565. The Court has jurisdiction "to grant any appropriate legal or equitable relief" and relief may include "limits on the activities or functions of the person." 12 U.S.C. §§ 5565(a)(1) & (a)(2)(G).

Unlike the substantive elements of deception claims discussed above, the standard for granting injunctions differs between the Federal Trade Commission Act and the CFPA. *Compare* 15 U.S.C. § 53(b) ("in proper cases the Commission may seek, and after

proper proof, the court may issue, a permanent injunction.") *with* 12 U.S.C. §§ 5564, 5565 (Bureau make seek and court has jurisdiction to grant "all appropriate legal and equitable relief").

Unless the statute authorizing injunctive relief modifies the standard, the Court reviews a request for permanent injunctive relief under "well-established principles of equity." eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). To obtain a permanent injunction, the Bureau must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id.

Here, a permanent injunction is warranted. The CFPB may not have itself suffered an irreparable injury, but it proceeds in this action on behalf of thousands of financially distressed individuals who were charged thousands of dollars for purported mortgage relief services that were offered in violation of law. If Defendants were to renew these activities, other potential victims could suffer similar harm. Considering the multitude of victims ensnared in the original scheme, future victims (were Defendants free to return to their old ways) may receive only a fraction of monetary damages to compensate them for injuries. Considering the balance of hardships and the public interest, the public interest is served by injunctions that reasonably "fence in" Defendants from engaging in behavior related to their previous illegal conduct. Cf. FTC v. Colgate-Palmolive Co., 380 U.S. 374, 395 (1965) (having previously violated section 5 of the Federal Trade Commission Act, defendants could expect "fencing in"). A permanent injunction is consequently "appropriate . . . equitable relief." 12 U.S.C. §§ 5564, 5565.

The proposed injunction includes four sections permanently limiting the activities of the Defendants from certain conduct. Section I of the Bureau's proposed order permanently bans the Defendants from "[a]dvertising, marketing, promoting, offering for sale, or selling any mortgage relief product or service" or "assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any mortgage assistance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01155 JVS (AJWx) | Date | January 7, 2016 |
| Title | Consumer Financial Protection Bureau v. Stephen Lyster Siringoringo, et al. | | |

relief product or service."

Section II prohibits the Defendants and their officers, agents, servants, employees, and attorneys, and persons in active concert or participation with any of them, (collectively, "agents") who receive notice of the permanent injunction order, from certain misrepresentations related to consumer financial products or services.

Section III prohibits Defendants and Defendants' agents from using, disclosing, or benefitting from customer information obtained in connection with the advertising, sale, or provision of the purported mortgage assistance relief service. It also requires Defendants to dispose of customer information within thirty days after entry of the permanent injunction order.

This second part of the proposed Section III presents a modest problem. Joshua Cobb is presently incarcerated. (Peltz Decl. ¶ 9.) CCMC is, apparently, unrepresented. (Id.) The Bureau has good cause for ensuring that customer information is disposed of and protected against unauthorized access. However, the "customer information obtained . . . in connection with the advertising, sale, or provision of a mortgage assistance relief service" is, in all likelihood, out of the immediate control of the Defendants. Consequently, it should remain the responsibility of the Bureau to effectuate the disposal of this offending customer information and this part two of Section III should only apply to those "officers, agents, servants, employees, and attorneys, and those persons in active concert participation" with the Defendants who receive actual notice of this Order and who have actual control over such customer information.

Section IV prohibits Defendants and Defendants' agents from collecting any payment from any consumer who purchased mortgage assistance relief products or services from Defendants.

The Court concludes that, with the modification to Section III, these prohibitions on Defendants' future conduct are appropriate. Further, the form of the order will satisfy the requirements of Federal Rule of Civil Procedure 65(d).

2. Civil Money Penalty

The Bureau argues that although a penalty in the hundreds of millions of dollars

could be justified, (Mem. 18, Dkt, No. 69), it seeks a much smaller penalty based on the lowest scienter tier prescribed by law and on conservative estimates of violations by Defendants.

The statutory authority for these civil penalties is 12 U.S.C. section 5565(c). Section 5565(c) provides that any violation of a law, rule, or final order may be penalized by a civil penalty not to exceed $5,000 per day the violation continues regardless of whether the defendant knows the violation is ongoing.[4]

The Bureau's proposed $12,000,000 penalty is based on an estimate of 2,400 customers paying advanced fees and being denied loan modifications between July 2011 and July 2013. This proposed penalty is a conservative ceiling on the civil penalty considering the fact that even if a customer obtained a loan modification, the Defendants still violated the law by collecting the fees in advance of the consumer accepting the modification. Uncontroverted evidence also establishes that Defendants had "over 4,000 clients in the firm's system" as of January 2012 and those clients had paid illegal advanced fees. (Henderson Decl. Supp. Appl. Default J. ("Henderson Decl.") ¶¶ 9, 13.) The Court concludes that the proposed $12,000,000 penalty is an appropriate maximum penalty.

The Court is also required to take into account mitigating factors in determining a penalty assessed under section 5565(c)(2). 12 U.S.C. § 5565(c)(3). The Court concludes that no evidence in the record indicates that any of the factors should apply to mitigate the proposed civil penalty of $12,000,000 considering the conservative tact the Bureau took in reaching its proposed penalty.

Although "[a] default judgment must not differ in kind from, or exceed in amount,

[4] The second tier authorizes civil penalties up to $25,000 per day for reckless violation of the law. 12 U.S.C. § 5565(c)(2)(B). The third tier authorizes civil penalties up to $1,000,000 per day for knowing violations of the law. 12 U.S.C. § 5565(c)(2)(C). Uncontroverted evidence could establish that Defendants should be penalized in one of these two tiers. (See Henderson Decl. ¶ 4 ("Alfred Clausen and [Cobb] actually ran Siringoringo's loan modification operations through their company, [CCMC]."); Salto Decl. Supp. Appl. Default J. ¶ 10 (describing a meeting that took place in February 2012 in which Siringoringo thought he'd get a slap on the wrist for his illegal conduct), Dkt. No. 71; Burge Decl. Supp. Appl. Default J. ¶ 5, Ex. 1 (describing an email from Siringoringo cc'ing Cobb on May 6, 2011 acknowledging the existence of the FTC rules that eventually became Regulation O), Dkt. No. 70.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 14-01155 JVS (AJWx) | Date | January 7, 2016 |
| Title | Consumer Financial Protection Bureau v. Stephen Lyster Siringoringo, et al. | | |

what is demanded in the pleadings," Fed. R. Civ. P. 54(c), it is sufficient for the Bureau to pray for "civil money penalties" and identify the bases for these penalties. Cf. Henry v. Sneiders, 490 F. 2d 215, 317 (9th Cir. 1974) (praying for "additional damages . . . the amount of which was to be proved at trial" is sufficient to satisfy Rule 54(c)).

IV. Conclusion

For the foregoing reasons, the Bureau's application is granted. The Court further finds that oral argument would not be helpful on this matter, and vacates the January 11, 2016 hearing. Fed. R. Civ. P. 78; L.R. 7-15. The Bureau shall submit within 15 days a conforming proposed order.

IT IS SO ORDERED.

: 00

Initials of Preparer kjt